FILED'05 OCT 19 14:43 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DARRELL PICKETT, | ) | CV-04-866-TC |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

COFFIN, Magistrate Judge:

    KAREN STOLZBERG
    4370 N.E. Halsey Street
    Portland, Oregon 97213

        Attorney for Plaintiff

    KARIN J. IMMERGUT
    United States Attorney
    District of Oregon
    NEIL EVANS
    Assistant United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR 97204-2902

1 - FINDINGS AND RECOMMENDATION

STEPHANIE R. MARTZ
Special Assistant United States Attorney
Office of General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

Attorneys for Defendant

**BACKGROUND**

Plaintiff, Darrell Pickett (Pickett), brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). 42 U.S.C. §§ 401-33. This court has jurisdiction under 42 U.S.C. § 405(g).

Pickett filed for DIB on November 14, 2001, alleging a disability onset date of December 30, 2000, which he later amended to December 1, 2000, because his date last insured (DLI) was December 31, 2000. Tr. 22, 541-42. Under Title II, a claimant must show that he became disabled during a period in which he had "insured status" under the program. See 42 U.S.C. § 416(I)(3).

Pickett alleges disability due to "severe back and leg injuries" and "weakness in major extremities." Tr. 56-58, 76. He was 40 years old at the time of his alleged onset date. Tr. 56. At the time of the Administrative Law Judge's (ALJ) decision on August 18, 2004, Pickett was working toward an associates degree in internet technology. However, as of his DLI Pickett

2 - FINDINGS AND RECOMMENDATION

had a high school education and two years of community college. Tr. 22, 551. In the past, he worked as a contractor, project manager, and an engineer technician. Tr. 77.

Following a hearing, where Pickett was represented by counsel, the ALJ denied his claim. Tr. 18-29. The Appeals Council also denied Pickett's request for review on June 22, 2004. Tr. 6-9. On appeal to this court Pickett's central argument is that his case should be remanded for consideration of new medical evidence post-dating his DLI. The Appeals Council looked at this evidence but determined that it did not merit reconsideration of the ALJ's decision.[1] Tr. 6. Pickett's objections to the ALJ's decision rely on a presumption that this new evidence, along with testimony relating to a time period after his DLI, is relevant and necessary to determine if he was disabled prior to December 31, 2000. I disagree.

Since I find Pickett does not meet the requirements for remand under sentence six of 42 U.S.C. § 405(g), Pickett's motion for remand should be DENIED, the Commissioner's decision should be AFFIRMED, and this case should be DISMISSED.

---

[1] Pursuant to 20 C.F.R. § 404.970(b), the Appeals Council will review plaintiff's appeal on the basis of newly submitted evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision." If it does, then the Appeals Council will review the case only "if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence [including the new and material evidence]."

3 - FINDINGS AND RECOMMENDATION

**STANDARD OF REVIEW**

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the

4 - FINDINGS AND RECOMMENDATION

Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one, the ALJ found that Pickett had not engaged in substantial gainful activity since his alleged onset date. Tr. 28; see 20 C.F.R. § 404.1520(b).

At step two, the ALJ found Pickett's degenerative disc disease was "severe" within the meaning of the Act. Tr. 28; see 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that Pickett's impairments did not meet or equal the requirements of a listed impairment. Tr. 28; see 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ assessed Pickett with the residual functional capacity (RFC) to perform medium exertional activities, with only occasional twisting, stooping, climbing, crawling, and bending. Tr. 27, 28; see 20 C.F.R. §§ 404.1520(e), 404.1545.

At step four, the ALJ found Pickett could have returned to his past relevant work during the period under review. Tr. 28. Having found Pickett not disabled at step four, the ALJ did not reach step five of the sequential evaluation. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).

## DISCUSSION

### I. Evidence submitted after the ALJ's decision does not warrant remand.

Pickett moves to have his case remanded, pursuant to sentence six of 42 U.S.C. § 405(g), on the basis of new medical evidence developed after his DLI. Tr. 381-413. This evidence includes records from the Advanced Pain Management Center, where Pickett was treated by Dmitriy Shore, PA-C, and Valdimir Fiks, M.D., from April 15, 2003, through March 30, 2004. Id. In particular, Pickett seeks to have the ALJ consider the results of a June 19, 2003, "provocative lumbar discogram," performed by Dr. Fiks, which led him to conclude that Pickett suffered from concordant pain at L4-5 and L5-S1 and a grade IV posterior annular tear at L4-5. Tr. 390. The Commissioner opposes remand on the basis that this new evidence doesn't meet the sentence six requirements.

Before this court will remand a case under sentence six of 42 U.S.C. § 405(g) a disability claimant must show: (1) that the evidence is indeed new (i.e. non-cumulative); (2) that the evidence is material (i.e. that it has a reasonable probability

6 - FINDINGS AND RECOMMENDATION

of changing the ALJ's decision); and (3) that he had good cause for failing to submit the evidence before the ALJ's final decision. Id.; see also Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).

The evidence is "new," according to Pickett, because there are no similar evaluations in the record. It is material, he contends, because the discogram "provides a logical basis for an inference that the pathology existed prior to the date last insured." Further, the physician who performed the discogram opined that Pickett's RFC was "far more restricted" than what the ALJ assessed, according to Pickett. Finally, Pickett had good cause for failing to submit this evidence at the administrative level because "it did not exist" at that time.

According to the Commissioner, Pickett has not shown materiality or good cause. The June, 2003, discogram is not material, she contends, because the findings do not relate to the period on or before December 31, 2000, and Pickett does not show that there is a reasonable possibility they would change the ALJ's finding that Pickett was not disabled on or before December 31, 2000. Further, argues the Commissioner, Pickett has failed to explain why he could not have obtained a discogram prior to the ALJ's decision. Under Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 512 (9th Cir. 1987), the good cause

requirement cannot be met by stating that the evidence simply didn't exist at that time, according to the Commissioner.

I agree with the Commissioner that Pickett has not shown good cause or materiality sufficient to merit remand under sentence six of 42 U.S.C. § 405(g). Accordingly, Pickett's motion for remand should be denied.

## II. The ALJ did not err by not calling a medical expert.

Pickett argues the ALJ should have called a medical expert to help him determine Pickett's onset date of disability. He writes, "[i]n a case such as this, where the objective medical evidence that definitively explains the degree of back pain alleged, did not exist until over 2 years after the date last insured, the assistance of a medical expert is clearly required." To bolster his argument he points to Social Security Regulation (SSR) 83-20, and DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) and Armstrong v. Commissioner of Social Security Admin., 160 F.3d 587 (9th Cir. 1998).

The Commissioner correctly identified many problems with this argument. First, Pickett misconstrues the law. Under SSR 83-20, the ALJ is advised to call a medical expert to assist in determining the precise onset date of disability where there is ambiguity as to *when* the claimant's disability began, not *whether* he is disabled. Amstrong and DeLorme simply changed the suggestion in SSR 83-20 to a mandate to call a medical expert in

8 - FINDINGS AND RECOMMENDATION

this scenario. In the case at bar, the ALJ determined that Pickett was not disabled, thus, there was no need to establish an onset date of disability, and no attendant need to call a medical expert.

The second fatal flaw in Pickett's argument is that it assumes the newly submitted evidence discussed above was before the ALJ, posing ambiguity as to whether the "annular disruption revealed by the discogram" was causing his back pain prior to his DLI. Such was not the case. The ALJ did not consider the discogram evidence, and since I find, above, that Pickett's newly submitted evidence does not merit remand for further consideration, I need not address Pickett's hypothetical scenario.

### III. The ALJ properly evaluated the medical evidence.

#### A. James Carlisle, M.D.

Pickett contends the ALJ wrongly rejected the opinion of treating physician James Carlisle, M.D. The ALJ mentioned two of Dr. Carlisle's opinions in his written decision. One is a treatment note from January 6, 1997, stating, "Filled out his disability again and put a comment that I recommend a closing exam. His status is not going to change." Tr. 321. The ALJ found no objective basis for this statement in the record, and noted that Dr. Carlisle's estimate that Pickett was unable to

work in January, 1997, was proven incorrect when Pickett did engage in substantial gainful activity afterwards. Tr. 23.

The ALJ also mentioned an April 9, 2003, note in which Dr. Carlisle writes,

> Mr. Pickett suffers from disabling pain and a poorly defined idiopathic myositis and osteoarthritis. His pain reached the point of being disabling in approximately February of 2000. He is under the care of Rheumatology and psychology [sic] as well as specialists in pain management.

Tr. 292. The ALJ discredited this opinion for the same reason he discredited the January, 1997, opinion- it was not supported by objective medical findings- and because Dr. Carlisle "cite[d] non-defined medical conditions, reache[d] a conclusion which is historically refuted, and ma[de] an assessment which is reserved to the Commissioner." Tr. 23.

Pickett argues the ALJ should not have rejected the January, 1997, note because it is "obvious this note was written with respect to some workers' compensation injury claim that was pending, and does not refer to questions of ultimate disability, as the ALJ supposes." Yet, Pickett contends the April, 2003, note, which contains a plain disability conclusion, is entitled to deference because Dr. Carlisle had been his attending physician for over seven years at that point, and "certainly had a valuable perspective on plaintiff's ability to function in a regular full time job."

Neither argument is persuasive. The Commissioner is not bound by a physician's opinion of a claimant's disability or employability, because these are issues reserved to the Commissioner. See 20 C.F.R. § 404.1527(e); SSR 96-5p. The Commissioner is also not required to "accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Baston v. Commissioner, 359 F.3d, 1190, 1195 (9th Cir. 2003).

The relative weight afforded the opinion of a physician depends upon his or her opportunity to observe and to get to know the patient as an individual. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The Commissioner must provide "clear and convincing reasons," supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is not contradicted by another doctor, and "specific and legitimate" reasons when it is. See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600-601 (9th Cir. 1999).

In addition to drawing vocational conclusions he was not qualified to make, Dr. Carlisle provides no clinical basis for his opinion. Moreover, as the ALJ found with respect to the January, 1997, note, Dr. Carlisle's April, 2003, opinion was inconsistent with Pickett's actual work history, showing that he

11 - FINDINGS AND RECOMMENDATION

continued to work through November, 2000. It also contradicted his earlier opinion by stating Pickett was disabled as of February, 2000, rather than January, 1997. I find these to be legally sufficient reasons to reject Dr. Carlisle's unsubstantiated, and internally inconsistent opinion.

B.   Step Two Severity Finding

Pickett contends the ALJ erred at step two of the sequential evaluation because he did not find Pickett's alleged psychological condition to be "severe" within the meaning of the Act. In his written decision, the ALJ noted that in January, 2001, after his DLI, Pickett "engaged in significant antisocial behavior which resulted in mental health hospitalization for nearly a week, where the diagnosis was major depressive disorder." Tr. 24. Following this episode, Pickett underwent minimal mental health treatment, and he testified at the hearing that he did not suffer from depression, that he did not take psychiatric medication, and that he sees a therapist once a month for anxiety. Tr. 563-64.

Citing his January, 2001, psychiatric episode, and a March, 2001, relapse, along with his testimony that he was experiencing episodes of anxiety around the time of the hearing, in April, 2003, Pickett argues that his symptoms "are not the sort that can properly be denominated as non-severe." I disagree.

The claimant bears the burden of proving that his impairment is severe. See 42 U.S.C. § 1382(a)(3)(A); 20 C.F.R. § 404.1520(c); see also Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001). An impairment is severe if it significantly limits a claimant's ability to do basic work activities, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling as well as understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to supervisors, co-workers and usual work situations, and dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1520(c), 404.1521. An impairment is not severe if it has no more than a minimal effect on the claimant's ability to do these types of activities. See SSR 96-3p.

I find the ALJ reasonably concluded that Pickett failed to show that he suffered significant work related limitations as a result of a psychological condition, prior to December 31, 2000. Pickett's argument to the contrary rests completely upon evidence post-dating his DLI, and therefore does not undermine the ALJ's step two finding.

### IV. The ALJ properly evaluated Pickett's testimony, and lay witness testimony.

#### A. Pickett's Testimony

Pickett contends the ALJ failed to give legally sufficient reasons to reject his subjective complaints. In determining the credibility of a claimant's statements, the ALJ is required to

13 - FINDINGS AND RECOMMENDATION

consider the entire record. SSR 96-7p. The ALJ may find a claimant not entirely credible, but a general assertion that a claimant is not credible is insufficient. The ALJ must give specific reasons, supported by substantial evidence, indicating that the ALJ has not arbitrarily discredited a claimant's testimony. See Thomas v. Barnhart, 278 F. 3d 947, 958-59 (9th Cir. 2002).

In assessing a claimant's credibility, the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996.

Here, the ALJ found that most of Pickett's testimony at the hearing concerned his symptoms and activities after his DLI, with only minimal testimony relating to the period on or before December 31, 2000. Tr. 25.

The ALJ reiterated that the objective medical evidence prior to his DLI reflected "minimal findings and problems." Id. He noted that prescribed medications and treatments were often ineffective in treating or lessening Pickett's alleged symptoms, and Pickett routinely declined to follow his doctor's prescriptions "due to alleged side effects, such as sweating, which he will attribute to a particular medication." Tr. 26.

Pickett argues he was compliant with treatment when he could afford it, so his failure to dutifully follow all prescriptions should not be used against him. Tr. 319, 339, 534. However, the regulations do not explicitly list inability to afford prescribed treatment as a "good reason" for failing to comply with it. See 20 C.F.R. § 404.1530. Even if the ALJ did err on this matter, I find the error would be harmless, because, as discussed below, the ALJ gave sufficient other reasons to find Pickett less than fully credible.

The ALJ found Pickett's activity level raised further questions about his candidness. Noting Pickett's testimony that he provided full-time care for his infant son after his alleged onset date of disability, performed some housework, and spent approximately 25 hours per week on his community college work, the ALJ concluded that Pickett's description of his activities after his DLI was "highly indicative of a significantly higher level of functioning than alleged." Tr. 25-26. The ALJ also

cited other incidents, such as "trashing his home during psychological and domestic problems," as evidence of inconsistency between the degree of disability alleged by Pickett and his activities.

Pickett argues none of these reasons is sufficient to discredit him. He avers that his child care duties are performed while resting in a reclining chair, that he takes frequent breaks during his school work and rests after long days in class, and that he only "trashed his house" on one occasion.

Although "a disability claimant need not vegetate in a dark room in order to be deemed eligible for benefits," if a claimant's activity level is inconsistent with his claimed limitations, his activities do bear on his credibility. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Since I find substantial evidence in support of the ALJ's conclusion that Pickett's activity level was inconsistent with his allegations of disabling back pain and disabling mental illness, I will not substitute my own judgment for the Commissioner's.

In sum, I find the ALJ provided legally sufficient reasons to discredit Pickett's hearing testimony, which was largely non-probative of disability on or before December 31, 2000.

B.  **Lay Witness Testimony**

Pickett contends the ALJ wrongly rejected the written statements of his wife, Dena Pickett, "for essentially the same reasons that he rejected [Pickett's] symptom testimony."

The ALJ must account for lay witness testimony and provide germane reasons for rejecting it. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). However, the ALJ is not required to discuss non-probative evidence. See Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Here, the ALJ found Dena Pickett's statements to be inconsistent with Pickett's own reports, and with objective medical evidence. Tr. 27. He noted, for instance, that in her April, 2003, letter Dena Pickett stated that the claimant did not leave the home because he was in chronic, "incapacitating" pain, yet he was attending community college full-time. Tr. 26-27. I find this to be a germane reasons to discredit a lay witness.

V. **Substantial evidence supports the ALJ's finding at step four.**

Pickett's final objection is to the ALJ's finding, at step four, that he could return to his past relevant work as a construction contractor, project manager, or engineering technician. Tr. 27. Pickett contends the ALJ failed to pose a complete vocational hypothetical to the vocational expert (VE), and therefore the VE's testimony has no evidentiary value.

The burden of proving he can no longer perform his past relevant work remains on the claimant, at step four of the

17 - FINDINGS AND RECOMMENDATION

sequential evaluation. <u>Tackett</u>, 180 F.3d at 1098. Thus, the ALJ need not solicit the opinion of a VE at this step. See <u>Crane v. Shalala</u>, 76 F.3d 251, 255 (9th Cir. 1996). Accordingly, the ALJ's step four finding will not be found unreasonable on the basis of a vocational hypothetical he didn't need to pose.

Pickett has shown no credible evidence to rebut the presumption that he remained capable of performing his past relevant work at the time of his DLI. Accordingly, I find the ALJ's step four determination is supported by substantial evidence.

### **RECOMMENDATION**

Based on the foregoing, Pickett's motion for remand should be DENIED, the Commissioner's final decision should be AFFIRMED, and a final judgement should be entered DISMISSING this case with prejudice.

DATED this 19t day of October, 2005.

Thomas M. Coffin
United States Magistrate Judge